AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California



FILED

OCT 1 9 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One iPhone 6 Plus, IMEI: 359171076947858.

)
)
)
)
)
)

Case No.   **17MJ3900**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A-2 (incorporated herein).

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachments B-2 (incorporated herein).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 952, 960, and 963 | Importation of Cocaine and Methamphetamine; Conspiracy to Import Cocaine and Methamphetamine |

The application is based on these facts:

See attached Affidavit (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Stirling A. Campbell, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/18/2017

_____
*Judge's signature*

City and state: San Diego, California

Hon. Ruben B. Brooks, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

An iPhone 6 Plus, IMEI: 359171076947858 ("Target Device 2" or "TD2") seized from Jennifer Morales on September 11, 2017.



Target Device 2 is currently in the possession of the Department of Homeland Security, Homeland Security Investigations.  Target Device 2 is presently stored at 880 Front Street, Suite 3200, San Diego, California.

## **ATTACHMENT B-2**

Authorization to search Target Device 2, as described in Attachment A-2, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices. The seizure and search of Target Device 2 will be conducted in accordance with the "Methodology" section of the affidavit submitted in support of this warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of July 1, 2017 to September 11, 2017:

    a.    tending to identify attempts to import cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers— used to facilitate the importation of cocaine, methamphetamine, or some other federally controlled substances from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in importation of cocaine, methamphetamine, or federally controlled substances from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, Target Device 2; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) One ZTE Phone in Pink Case (No IMEI or Serial Number Available);<br><br>(2) One iPhone 6 Plus, IMEI: 359171076947858. | **AFFIDAVIT OF SPECIAL AGENT STIRLING A. CAMPBELL  IN SUPPORT OF SEARCH WARRANT** |

11
12
13
14
15

16    I, Special Agent Stirling A. Campbell, having been duly sworn, declare and state as
17 follows:

18                                    **I**

19                        **INTRODUCTION**

20    1.    I make this affidavit in support of an application for a warrant to search  (1) a
21 ZTE phone in a pink case ("Target Device 1" or "TD1"), and (2) an iPhone 6 Plus, IMEI:
22 359171076947858 ("Target Device 2" or "TD2") (collectively, the "Target Devices") and
23 seize evidence of crimes, specifically violations of Title 21, United States Code, Sections
24 952, 960, and 963 Unlawful Importation of a Controlled Substance and Conspiracy to
25 Unlawfully Import a Controlled Substance (the "Target Offenses").

26    2.    The Target Devices were seized from Defendant Jennifer Morales
27 ("Defendant") at the time of her arrest for Importation of Cocaine and Methamphetamine
28 on September 11, 2017 at the San Ysidro Port of Entry.  The Target Devices are currently

1  in the possession of Homeland Security Investigations and are presently stored at 880 Front
2  Street, San Diego, California.

3         3.     This search of the Target Devices supports an investigation and prosecution
4  of Defendant for the Target Offenses.  Based on the information below, there is probable
5  cause to believe that a search of the Target Devices, as described in Attachments A-1 and
6  A-2, will produce evidence of the Target Offenses, as described in Attachments B-1 and
7  B-2.

8         4.     The following is based upon my experience and training, the investigation
9  relating to Defendant's arrest, and my consultations with other law enforcement agents and
10  officers experienced in narcotics violations, including the Target Offenses.  The evidence
11  and information contained herein was developed from interviews and my review of
12  documents and evidence related to this case.  Because I make this affidavit for the limited
13  purpose of obtaining a search warrant for the Target Devices, it does not contain all of the
14  information known by me or other federal agents regarding this investigation, but only sets
15  forth those facts believed to be necessary to establish probable cause.  Dates and times are
16  approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II

## AFFIANT'S EXPERIENCE AND TRAINING

19         5.     I am a Special Agent ("SA"), with the United States Department of Homeland
20  Security ("DHS"), United States Immigration and Customs Enforcement ("ICE"),
21  Homeland Security Investigations ("HSI").  I have been employed by HSI since October
22  2005.  I am currently assigned to HSI's San Diego Child Exploitation Group.

23         6.     I am a graduate of the Federal Law Enforcement Training Center ("FLETC")
24  Criminal Investigator Training Program ("CITP") and the Immigration and Customs
25  Enforcement Special Agent Training ("ICESAT") training courses.  During these courses,
26  I received training in various types of criminal investigations, to include investigations
27  involving the illegal trafficking of narcotics, currency, firearms and contraband.

28

7.    I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.  I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants.  I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

8.    My training and experience in narcotics enforcement has included narcotics interdiction, the identification of different types of narcotics, including methamphetamine and cocaine, and the investigation of persons in possession of narcotics for purposes of sales and transportation.  In addition, I speak regularly with narcotics investigators at the federal, state and local level regarding the manner in which sellers of narcotics store, transport and sell narcotics.

9.    I have participated in many aspects of criminal investigations including the issuance of subpoenas, reviewing evidence, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants.  As a result of over thirteen years of law enforcement experience, I have personally arrested or participated in the arrest of over 300 persons for violations of various federal and state drug laws.  In over half of these cases, I conducted interviews with the arrested persons and with their associates.

10.    Based upon my training and experience as an HSI Special Agent, my participation in the investigation of narcotic organizations, and consultations with law enforcement officers experienced with narcotic trafficking investigations, and all the facts and opinions set forth in this Affidavit, I submit the following:

a.    Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, email, Internet, social networking websites, and voice messages.

b.    Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability

1  of law enforcement personnel to simultaneously track the originating and destination
2  telephone numbers of calls placed to and from their cellular telephone.

3       c.    Drug smugglers will use cellular telephones because they are able to
4  actively monitor the progress of their illegal cargo while the conveyance is in transit.

5       d.    Drug smugglers and their accomplices will use cellular telephones
6  because they can easily arrange and/or determine what time their illegal cargo will arrive
7  at predetermined locations, so as to facilitate the further distribution of their illegal cargo
8  within the United States.

9       e.    Drug smugglers will use cellular telephones to direct drivers to
10  synchronize an exact drop off and/or pick up time of their illegal cargo.

11       f.    Drug smugglers will use cellular telephones to notify or warn their
12  accomplices of law enforcement activity, including the presence and location of marked
13  and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports
14  of Entry within the United States.

15       g.    Conspiracies involving narcotics smuggling often generate many types
16  of evidence including, but not limited to, cellular phone-related evidence such as voicemail
17  messages referring to the arrangements of travel and payment, names, photographs, text
18  messages, and phone numbers of co-conspirators.

19  **III**
20  **STATEMENT OF PROBABLE CAUSE**

21      11.    On September 11, 2017, at approximately 2:25 a.m., Defendant applied for
22  entry to the United States at the San Ysidro Port of Entry.  Defendant was the driver,
23  registered owner, and sole occupant of a 2003 BMW X5 sports utility vehicle bearing
24  California license plates (the "Vehicle").

25      12.    Customs and Border Protection Officer ("CBPO") Guerrero and his Narcotics
26  Human Detection Dog ("NHDD") were conducting pre-primary roving operations during
27  this time.  CBPO Guerrero's NHDD alerted to the Vehicle's undercarriage to indicate that
28  she detected the odor of narcotics.

4

13.     CBPO Guerrero radioed for assistance and then informed the responding officer, CBPO Ware, his NHDD had alerted to the Vehicle's undercarriage.  CBPO Ware approached Defendant to speak with her.

14.     Defendant told CBPO Ware that she traveled to Mexico to visit her boyfriend and was returning home to Paramount, California.  She stated she had owned the Vehicle for approximately one month.  Defendant twice claimed she was not bringing anything back from Mexico.  During this conversation, Defendant did not make any eye contact with CBPO Ware and appeared to be nervous.

15.     CBPO Ware inspected the Vehicle's undercarriage, where the NHDD had alerted, and observed that there was "sprayed on mud."  He pried the plastic cover from the undercarriage and discovered a non-factory compartment, along with fresh paint and the odor of bondo.  CBPO Ware then escorted Defendant to the security office.  The Vehicle was sent to an area for secondary inspection.

16.     While in secondary inspection, CBPO McIntosh scanned the Vehicle using a Z-Portal machine and detected anomalies near the Vehicle's gas tank and rocker panels. CBPO Monnat subsequently conducted a physical inspection of the Vehicle.  During his inspection, CBPO Monnat discovered that the Vehicle had non-factory compartments that ran parallel with the rocker panels on both sides.  The compartments were lined with bondo putty and painted to match the color of the Vehicle.  CBPO Monnat gained access to the compartments by using a hammer to open an access panel for each compartment.

17.     CBPO Monnat removed a total of forty-two (42) packages from the Vehicle, twenty (20) from the driver's side compartment, and twenty-two (22) from the passenger's side compartment.  Twelve (12) of these packages were labeled "VIEJITO" and field tested positive for the presence of methamphetamine.  The other thirty (30) packages were labeled "AMERICA" and field tested positive for the presence of cocaine.  The packages containing methamphetamine had a total weight of 6.5 kilograms, and the packages containing cocaine had a total weight of 39.0 kilograms.

18. I reviewed Defendant's border crossing records and learned that Defendant crossed the Vehicle into United States on four occasions during the five weeks leading up to her arrest. Defendant also possessed what appears to be a round trip bus ticket from Los Angeles to San Ysidro dated September 9, 2017, two days prior to her arrest. The ticket is under the name "Jessica Rodriguez."

19. In addition to the cocaine and methamphetamine, CBPO Monnat seized the Target Devices from Defendant at the time of her arrest. I responded to the San Ysidro Port of Entry and spoke with the CBPOs involved in Defendant's arrest. These CPBOs confirmed that Defendant had the Target Devices in her possession at the time of her arrest.

20. On September 13, 2017, I turned on TD2 and attempted to access it for the limited purpose of obtaining the device's serial number or IMEI for identification purposes. I guessed and successfully unlocked the device using Defendant's date of birth as the passcode. I went to TD2's "settings" application to retrieve the device's IMEI and serial number, but did not view any other content or applications.

21. Based on my experience and investigation in this case, and others, Defendant, as well as other persons as yet unknown, was involved in an ongoing conspiracy to import cocaine, methamphetamine, or other federally controlled substances and to distribute those controlled substances within the United States.

22. Based on my experience investigating narcotics smugglers, Defendant may have used the Target Devices to coordinate with her co-conspirators regarding the importation and delivery of the cocaine and methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information stored in the memory of a cellular telephone may identify other persons involved in narcotics trafficking activities.

23. Based on my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts

1   and opinions set forth in this affidavit, I believe that information relevant to the narcotics

2   smuggling activities and her co-conspirators, such as recent calls made and received,

3   telephone numbers, contact names, electronic mail (email) addresses, appointment dates,

4   text messages, email messages, messages and posts from social networking sites, pictures,

5   and other digital information are stored in the memory of the Target Devices.

6        24.    Further, the information stored on the Target Devices may contain evidence

7   of the fruits and instrumentalities of the Target Offenses, including evidence of financial

8   gain or the conveyances used to execute the crime such as for the purchase of packaging

9   materials or to cover Defendant's travel expenses from Los Angeles to Tijuana.

10        25.    Finally, drug trafficking conspiracies require intricate planning and

11   coordination. This often occurs days, weeks, or even months prior to the actual importation

12   of the drugs into the United States.  Co-conspirators communicate with one another in

13   efforts to ensure success in getting their valuable cargo to its destination within the United

14   States.  In this case, evidence supports probable cause to search the Target Devices for

15   information dating back to July 1, 2017.  This is based upon a review of records showing

16   that Defendant crossed into Mexico for the first time this year on July 3, 2017, registered

17   the Vehicle in her name on August 1, 2017, and then repeatedly crossed the border in the

18   Vehicle from August 5, 2017, until her arrest on September 11, 2017.  Therefore, the date

19   range for this search should go from July 1, 2017 to September 11, 2017.

20   **III**

21   **METHODOLOGY**

22        26.    It is not possible to determine, merely by knowing the cellular telephone's

23   make, model and serial number, the nature and types of services to which the device is

24   subscribed and the nature of the data stored on the device.  Cellular devices today can be

25   simple cellular telephones and text message devices, can include cameras, can serve as

26   personal digital assistants and have functions such as calendars and full address books and

27   can be mini-computers allowing for electronic mail services, web services and rudimentary

28   word processing.  An increasing number of cellular service providers now allow for their

1   subscribers to access their device over the internet and remotely destroy all of the data
2   contained on the device.  For that reason, the device may only be powered in a secure
3   environment or, if possible, started in "flight mode," which disables access to the network.
4   Unlike typical computers, many cellular telephones do not have hard drives or hard drive
5   equivalents and store information in volatile memory within the device or in memory cards
6   inserted into the device.  Current technology provides some solutions for acquiring some
7   of the data stored in some cellular telephone models using forensic hardware and software.
8   Even if some of the stored information on the device may be acquired forensically, not all
9   of the data subject to seizure may be so acquired.  For devices that are not subject to
10  forensic data acquisition or that have potentially relevant data stored that is not subject to
11  such acquisition, the examiner must inspect the device manually and record the process
12  and the results using digital photography.  This process is time and labor intensive and may
13  take weeks or longer.

14      27.    Following the issuance of this warrant, I, or another federal law enforcement
15  officer, will collect the Target Devices and subject them to analysis.  All forensic analysis
16  of the data contained within the Target Device and their memory cards will employ search
17  protocols directed exclusively to the identification and extraction of data within the scope
18  of this warrant.

19      28.    Based on the foregoing, identifying and extracting data subject to seizure
20  pursuant to this warrant may require a range of data analysis techniques, including manual
21  review, and, consequently, may take weeks or months.  The personnel conducting the
22  identification and extraction of data will complete the analysis within ninety (90) days of
23  the date the warrant is signed, absent further application to this court.

24                                              IV

25                                      **CONCLUSION**

26      29.    Based on all of the facts and circumstances described above, my training and
27  experience, and consultations with other law enforcement officers, there is probable cause
28  to conclude that Defendant utilized the Target Devices to communicate with others and

1  facilitate the importation of cocaine and methamphetamine in violation of Title 21, United
2  States Code, Sections 952, 960, and 963.  In this case, Defendant drove a car into the United
3  States that contained 6.5 kilograms of methamphetamine and 39.0 kilograms of cocaine
4  concealed in two non-factory compartments.  Defendant was the driver, sole occupant, and
5  registered owner of the Vehicle.  Defendant crossed the Vehicle into United States on four
6  occasions during the five weeks leading up to her arrest.  Yet Defendant also possessed a
7  round trip bus ticket from Los Angeles to San Ysidro.  The Target Devices will likely
8  contain information confirming whether Defendant controlled the Vehicle, or if someone
9  else maintained control over the Vehicle and only provided it to Defendant when she
10 crossed the border, as well as other evidence of the Target Offenses.

11       30.   Based on all of the facts and circumstances described above, probable cause
12 exists to conclude that Defendant used the Target Devices to facilitate the offenses of
13 importation of a controlled substance and conspiracy to import a controlled substance.
14 Defendant likely used the Target Devices to facilitate these offenses by transmitting and
15 storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title
16 21, United States Code, Sections 952, 960, and 963. Given Defendant's crossing history
17 and the date she registered the Vehicle in her name, probable cause exists to believe that
18 evidence of the aforementioned offenses exists on the phone for the period of July 1, 2017
19 to September 11, 2017.

20       31.   Based on all the facts and circumstances described above, probable cause
21 exists to believe that evidence, fruits and instrumentalities of illegal activity committed by
22 Defendant continues to exist on the Target Devices.

23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

9

1      32.    Based upon my experience and training, consultation with other agents in

2  narcotics investigations, consultation with other sources of information, and the facts set

3  forth herein, I believe that the items to be seized set forth in Attachments B-1 and B-2

4  (incorporated herein) are likely to be found in the property to be searched described in

5  Attachments A-1 and A-2 (incorporated herein). Therefore, I respectfully request that the

6  Court issue a warrant authorizing me, or another federal law enforcement agent specially

7  trained in digital evidence recovery, to search the items described in Attachments A-1 and

8  A-2, and seize the items listed in Attachments B-1 and B-2.

9      I declare under penalty of perjury that the foregoing is true and correct.

Special Agent Stirling A. Campbell
Homeland Security Investigations

Sworn to and subscribed before me this  1 8 th  day of October, 2017.

HONORABLE RUBEN B. BROOKS
UNITED STATES MAGISTRATE JUDGE

10